IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:20-CR-00002-BR

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| MATTHEW JAMES JONES | ) | |

Having sentenced Matthew James Jones in open court earlier today, this matter is now before the court for further explanation of the sentence imposed.

## I. BACKGROUND

In May 2019, a criminal investigation revealed Jones had downloaded child pornography. (PSR, DE # 23, at 3.) On 9 July 2019, agents executed a search warrant at his residence, seizing a tablet, SD card, cellular phone, and laptop. (Id.) As a result of the investigation, the government filed a criminal information charging Jones with one count of violating 18 U.S.C. § 2252(a)(2). On 9 February 2021, Jones entered into a written plea agreement, waived his right to be indicted, and pled guilty to the charged crime. (Id.) He also agreed to make restitution to any victim. (Id.)

Prior to sentencing, a probation officer calculated Jones's advisory sentencing range as a part of the presentence investigation report. The officer assigned a base offense level of 22 based on U.S.S.G. § 2G2.2(a)(2); added two levels pursuant to § 2G2.2(b)(2) because the material involved a prepubescent minor or a minor who had not attained the age of 12; added four levels pursuant to § 2G2.2(b)(4)(A) because the offense involved material portraying sadistic or masochistic conduct or depictions of violence; added two levels pursuant to § 2G2.2(b)(6) because the offense involved the use of a computer for the possession of the material; and added five levels pursuant to § 2G2.2(b)(7)(D) because the offense involved 600 or

more images. From the adjusted offense level of 35, the officer subtracted three levels pursuant to §§ 3E1.1(a)–(b) for acceptance of responsibility, resulting in a total offense level of 32. Jones's lack of a prior criminal record placed him in criminal history category I. Accordingly, his advisory sentencing range was 121 to 151 months, with a mandatory minimum term of incarceration of five years, 18 U.S.C. § 2252(b)(1), and a mandatory minimum five-year term of supervised release, 18 U.S.C. § 3583(k).

On 17 May 2021, the court began the sentencing hearing. The government requested a sentence within the guideline range. By written motion, Jones requested a downward departure/variance. (Mot., DE # 25). Jones argues the § 2G2.2 enhancements are "'fundamentally different from most, and unless applied with great care [] lead[] to unreasonable sentences that are inconsistent with what [18 U.S.C.] § 3553 requires.'" (Id. at 5 (quoting United States v. Dorvee, 616 F.3d 174, 186 (2d Cir. 2010)).) After a review of the § 3553 factors, including the findings of his psychological evaluation, Jones requests that the court vary downward to the mandatory minimum sentence of 60 months. (Id. at 9.) Jones reiterated these arguments during the sentencing hearing. The court continued the matter in order to adequately consider the arguments of counsel.

## II. DISCUSSION

The sentencing "[g]uidelines should be the starting point and initial benchmark" for a sentencing court but they are not the only consideration. Gall v. United States, 552 U.S. 38, 49 (2007). Rather, after calculating the applicable guideline range and allowing the parties an opportunity to advocate for an appropriate sentence, the court should consider the § 3553(a) factors. Id. at 49–50; see also United States v. Smith, 275 F. App'x 184, 186 (4th Cir. 2008). If the sentencing court decides a sentence outside of the guideline range is appropriate, "it 'must

2

consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" United States v. Morace, 594 F.3d 340, 346 (4th Cir. 2010) (quoting Gall, 522 U.S. at 50).

"[D]istrict courts may 'vary from [g]uidelines ranges based solely on policy considerations, including disagreements with the [g]uidelines.'" Id. at 349 (quoting United States v. Kimbrough, 552 U.S. 85, 101 (2007)). In Kimbrough, the Supreme Court noted that the Sentencing Commission "fills an important institutional role: It has the capacity courts lack to 'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" Kimbrough, 552 U.S. at 109. However, the Court noted that the crack-cocaine guidelines "do not exemplify the Commission's exercise of its characteristic institutional role," id., because in forming those guidelines "the Commission looked to the mandatory minimum sentences [for cocaine offenses], and did not take account of 'empirical data and national experience,'" id. (citation omitted). The Court in Gall likewise noted "not all of the [g]uidelines are tied to [] empirical evidence." 552 U.S. at 47. "[T]he history of the child pornography [g]uidelines reveals that, like the crack-cocaine [g]uidelines at issue in Kimbrough, the child pornography [g]uidelines were not developed in a manner 'exemplify[ing] the [Sentencing] Commission's exercise of its characteristic institutional role.'" United States v. Henderson, 649 F.3d 955, 960 (9th Cir. 2011) (quoting Kimbrough, 552 U.S. at 109). Accordingly, "district judges must enjoy the same liberty to depart from them based on reasonable policy disagreement as they do from the crack-cocaine [g]uidelines discussed in Kimbrough." Id.; see also Morace, 594 F.3d at 349 (noting courts' general ability to vary from guideline ranges based on policy considerations).

**A. History of Child Pornography Guidelines**

3

Comparable to drug trafficking sentences, Congress has used a mix of mandatory minimum increases and directives to the Commission to amend sentencing policies for sex offenses. See Henderson, 649 F.3d at 955 (citation omitted). At the guidelines' inception, simple possession of child pornography was not a crime, and "transporting, receiving, or trafficking" offenses carried a base offense level of 13. Id. The crimes of possession and possession with intent to sell were added in 1990 as part of the Crime Control Act. See Crime Control Act of 1990, Pub. L. 101-647, § 323, 104 Stat. 4789, 4818-19 (1990). In response, the Commission added § 2G2.4 to address receipt and possession, and amended § 2G2.2 such that the base offense level of 13 for trafficking offenses would be increased by two levels if the material involved a prepubescent minor or minor under the age of twelve; by up to five levels if the offense involved distribution; and by four levels if the material portrayed sadistic or masochistic conduct or other violence. Henderson, 649 F.3d at 960 (citing U.S.S.G. App. C, amend. 372 (Nov. 1, 1991)). "The base offense level for receipt or possession was 10 and there was a two-level enhancement if the material involved a prepubescent minor or a minor under the age of twelve." Id.

"In 1991, over the objection of the Commission, Congress directed the Commission to increase penalties for child pornography offenses." Id. (internal citation omitted) (citing Treasury, Postal Service and General Government Appropriations Act, 1992, Pub. L. No. 102-141, § 632, 105 Stat 834, 876 (1991)). So directed, the Commission amended § 2G2.2 to provide that receipt offenses would be sentenced under that provision, to increase the base offense level from 13 to 15, and to add a five-level pattern of activity enhancement. Id. at 961 (citing U.S.S.G. App. C, amend. 435 (Nov. 27, 1991)). The Commission also amended § 2G2.4. In 1995, Congress again directed the Commission to increase the base offense levels by two

4

levels and add a two-level enhancement for the use of a computer. Id. (citing Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71 §§ 2-3, 109 Stat. 774 (1995)). The Commission complied, adding the computer enhancement and increasing the base offense levels from 15 to 17 for trafficking offenses and from 13 to 15 for possession. Id. (citing U.S.S.G. App. C., amend. 537 (Nov. 1, 1996)). In a 1996 report to Congress, the Commission explained that its analysis supported an enhancement for the use of a computer to solicit participation in the production of child pornography, but it criticized the general two-level enhancement because it did not distinguish between run of the mill users and serious distributors. Id. (citing U.S. Sentencing Comm'n, *Sex Offenses Against Children: Findings and Recommendations Regarding Federal Penalties* 25-30, 37-38 (1996), https://www.ussc.gov/sites/default/files/pdf/news/congressional-testimony-and-reports/sex-offense-topics/199606-rtc-sex-crimes-against-children/199606_RtC_SCAC.pdf)). The Commission recommended increases in the statutory maximum penalties for production and for those with prior convictions for sex abuse crimes, which were ultimately enacted in 1998 and 2000. Id.

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), establishing a five-year mandatory minimum sentence for trafficking/receipt offenses, increasing the statutory maximum from 15 to 20 years for trafficking/receipt offenses, and increasing the statutory maximum for possession offenses from five to ten years. Id. at 962 (citing PROTECT Act, Pub. L. No. 108-21 § 103, 117 Stat. 650, 653 (2003)). Congress also added a four-level enhancement to § 2G2.4 for sadistic or masochistic conduct and amended §§ 2G2.2 and 2G2.4 by adding enhancements based on the number of pornographic images possessed. Id.

5

In 2012, the Commission analyzed the efficacy of federal child pornography sentencing guidelines, particularly for non-production offenses. See U.S. Sentencing Comm'n, *Federal Sentencing of Child Pornography: Non-Production Offenses* 1 (2021), https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2021/20210629_Non-Production-CP.pdf ("2021 Report"). The 2012 report found, in part, that technological advances had resulted in enhancements, intended only for the most serious offenses, being routinely applied to most offenders; that within-range sentences were imposed in less than 1/3 of non-production cases; and that differences in charging practices contributed to sentencing disparities— "particularly the decision to charge a defendant with possession (requiring no mandatory minimum sentence) versus receipt or distribution (requiring a five-year mandatory minimum sentence)." See id. at 2. As such, the Commission recommended that Congress provide authority for the Commission to amend the provisions to account for technological changes, emerging research, and variations in offender culpability and dangerousness. Id. The Commission also recommended that Congress align the statutory penalties for receipt offenses (a five-year mandatory minimum) and possession offenses (requiring no mandatory minimum), noting that Congress's rationale for punishing receipt more severely than possession had been largely eliminated. Id.

As of the Commission's June 2021 update,

> Congress has not implemented the Commission's statutory or guideline recommendations [from 2012]. Therefore, § 2G2.2 remains largely unchanged, with the guideline enhancements for non-production child pornography offenders at issue in the 2012 Child Pornography Report still in effect. As a result, judges have continued to sentence most non-production child pornography offenders below their guideline ranges, most often by imposing variances pursuant to 18 U.S.C. § 3553(a).

Id. at 3. The 2021 Report also concluded:

6

> Constrained by statutory mandatory minimum penalties, congressional directives, and direct guideline amendments by Congress in the PROTECT Act of 2003, § 2G2.2 contains a series of enhancements that have not kept pace with technological advancements. Four of the six enhancements—accounting for a combined 13 offense levels—cover conduct that has become so ubiquitous that they now apply in the vast majority of cases sentenced under § 2G2.2.

Id. at 4. In fiscal year 2019, over 95% of non-production offenders received enhancements for the use of a computer and for the age of the victim. Id. Enhancements for sadistic or masochistic conduct or abuse applied in 84% of cases and enhancements for having more than 600 images in 77.2% of cases. Id. Thus, "[t]he enhancements are intended to increase the base offense level based on the presence of an aggravating factor, but they routinely apply to the typical distribution, receipt, and possession offender, with minimal variation in application rate." Id. at 19 (concluding "across all non-production child pornography offense types, § 2G2.2 fails to distinguish adequately between more and less severe offenders"); see also Dorvee, 616 F.3d at 186–87 (noting that § 2G2.2 results in little distinction between run-of-the-mill cases and the most dangerous offenders). The defendant in this case received each of these four enhancements, resulting in a thirteen-level increase in offense level. (See PSR, DE # 23.)

The Commission's 2021 Report also concluded sentencing disparities among similarly situated non-production offenders have become increasingly pervasive due to charging practices, the applicable guideline ranges, and the sentencing practices of judges. 2021 Report, at 7. On the issue of charging practices, the Commission noted "the conduct underlying a receipt conviction is usually indistinguishable from a possession conviction, which does not carry a mandatory minimum sentence." Id. at 12. While the receipt offense requires the defendant to know they are coming into possession of child pornography at the time of receipt, the Commission notes "it is exceedingly rare that a possession offender would unwittingly receive child pornography and later decide to possess it." Id. "Thus, as a practical matter, the conduct

7

underlying a receipt or possession charge is materially identical." Id. Thus, the government's decision to charge receipt or possession—when the underlying conduct is largely the same— determines whether an individual faces a mandatory minimum of five years' incarceration or is sentenced entirely within the discretion of the court (subject only to the statutory maximum).

In addition to critiques by the Commission, § 2G2.2 is often criticized by judges. See, e.g., Morace, 594 F.3d at 346 (noting the trend of downward variances in child pornography cases and that the Commission views this trend as a comment by judges on the guidelines' severity). The Commission's 2021 Report found "[c]ourts increasingly apply downward variances in response to the high guideline ranges that now apply to the typical non-production child pornography offender," with less than 30% of non-production offenders receiving a guideline sentence in fiscal year 2019.[1] Id. at 23–24 (also noting "The majority of non-production child pornography offenders (59.0%) received a variance below the guideline range under 18 U.S.C. § 3553(a)."). The Commission opined that the increasing gap between the average guideline minimum and average sentence imposed "shows that most courts believe § 2G2.2 is generally too severe and does not appropriately measure offender culpability in the typical non-production child pornography case." Id. at 22; see also Morace, 594 F.3d at 345–48 (collecting cases and discussing nationwide trend of downward departures and variances in child pornography cases); Smith, 275 F. App'x at 184–88 (upholding downward variance of 54 months in a non-production child pornography case); United States v. Cheever, No. 15-cr-00031-jlk, 2016 U.S. Dist. LEXIS 93384, at *5–6 (D. Colo. July 18, 2016) (rejecting the guidelines and noting that other courts have done the same). For the reasons stated above and outlined by the

---

[1] From fiscal years 2005 to 2011, the rate of within-range sentences decreased from 73.3% to 32.7%, and the rate of downward variances increased from 15.6% to 52.7%. 2021 Report, at 24. "Starting in fiscal year 2011, the rate of within-range sentences began stabilizing, decreasing only slightly from 32.7 percent in fiscal year 2011 to 30.0 percent in fiscal year 2019." Id.

8

Commission in the 2021 Report, I disagree with all of the § 2G.2.2 guideline enhancements applicable in this case.

### B. Discussion of Pertinent § 3553(a) Factors[2]

*1. Nature and Circumstances of the Offense/History and Characteristics of the Defendant*

As part of an undercover FBI investigation, agents identified an IP address belonging to Jones which was involved in the downloading of child pornography. (PSR, DE # 23, at 3.) Following the execution of a search warrant, investigators concluded Jones used a computer to receive and possess thousands of images and videos, which included images and videos of minors under the age of 12 and contained sadistic or masochistic conduct. (Id. at 4.) It serves no purpose to further describe the images and videos with particularity, suffice it to say that the content included graphic images of young children, involved in demeaning sexual activities. Jones admitted to viewing child pornography and provided a written acceptance of responsibility for the charged offense. (Id.)

Jones is 57 years old and has been married for 31 years. (Id. at 5–6.) The couple has one child, who lives outside the home. (Id. at 6.) He maintains contact with his son and other family members. (Id.) Jones graduated from high school and obtained an associate degree in Business Administration and Accounting, achieving the Dean's List twice, and having a 3.42 cumulative grade point average. (Id.) For most of his adult life, Jones has been gainfully employed as a manager at Family Dollar. (Id. at 7.) Prior to the instant offense, Jones has no criminal history.

---

[2] In only discussing certain factors, the court has not disregarded those not specifically mentioned herein. The court considered all § 3553(a) factors in forming defendant's sentence.

9

He has not been accused of having violated or molested any person under the age of 18[3] and does not suffer from any diagnosed medical conditions.

In June 2020, Jones completed multiple psychological assessments and underwent a psychological evaluation. (DE # 28, at 1.) His evaluator opined that he does not display features of antisocial personality disorder. (Id. at 3.) Using the Child Pornography Offender Risk Tool to assess his likelihood of recidivism, his evaluator opined that his risk of recidivism is below average for child pornography offenders. (Id. at 4.) Jones's evaluator also noted several positive factors which he believes will reduce the risk of recidivism, including the lack of personality disorder, a long-term relationship with his wife, a lack of substance abuse issues, and an internal motivation to manage his pornography use. (Id.) As such, he concludes Jones's risk of recidivism is low, and in fact, is lower than the average adult male offender. The court agrees that Jones possesses several positive factors which, in addition to proper treatment, result in a low risk of recidivism.

*2. Need for the Sentence Imposed*

**a. Reflect seriousness of offense, promote respect for law, and provide just punishment**

There can be no dispute that the receipt, possession, and manufacturing of child pornography are incredibly serious offenses, and the court is mindful of Congress's oft-expressed view that such crimes are deserving of serious sanctions. See Morace, 594 F.3d at 347 (noting "Congress has repeatedly expressed its will regarding appropriate penalties for child

---

[3] As the Second Circuit previously noted, § 2G2.2 often recommends a longer sentence for those who receive or distribute images of minors than the applicable guidelines recommend for those who actually engage in sexual conduct with minors. See Dorvee, 616 F.3d at 187.

10

pornography offenders"). Consumers of such content create a demand for its production and distribution, which certainly justifies its proscription and punishment.

Sentencing individuals is a task that I do not take lightly. Ensuring just punishment is a difficult but necessary part of sentencing an individual.

> Section 3553(a) provides evaluative criteria to achieve balance between the order of society intended to be protected by punishment and the utilitarian view that every human being must be afforded dignity. The stated criteria often clash and not all apply in every case, but they demand individuated considerations: No one size fits all. The object of this balancing process is not to fill in the blank of some mechanical calculation, but to impose a decent, appropriate and deserved sentence under all attendant circumstances. The imposition of mandatory minima removes that balancing from the sentencing calculus and is therefore antithetical to the adjudicative process. The result is a punishment without any expression of rational justification.

Cheever, 2016 U.S. Dist. LEXIS 93384, at *23; see also Gall, 552 U.S. at 52 (noting that district courts should "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue" (internal quotation marks omitted)). Given the facts and circumstances of this case, the five-year mandatory minimum in this case preempts the formulation of a sentence that is sufficient, but not "greater than necessary" to achieve the statutory purposes of Section 3553(a). Nonetheless, I recognize that, at a minimum, I am bound by law to impose it.

### b. Afford adequate deterrence to criminal conduct and protect public from further crimes of the defendant

Aside from the instant offense, Jones has never been convicted of a crime. He has never engaged in violent behavior nor had any sexual contact with any individual (minor or otherwise) other than his wife since their marriage thirty-two years ago. (DE # 28, at 3, 6.) His psychological assessment reveals a low risk of recidivism and an understanding that his conduct was wrong. It is the opinion of his evaluator that his "risk of recidivism could be easily managed

in the community through a combination of appropriate treatment and supervision." (DE # 28, at 4.) The court agrees this is the most appropriate manner in which to protect the public—ensure Jones receives adequate treatment in the recommended modalities. Nonetheless, the mandatory minimum sentence of five years and term of supervised release will afford more than adequate deterrence and protect the public.

### c. Provide defendant with needed educational or vocational training, care, and other treatment in most effective manner.

As previously discussed, Jones possesses employable skills which he has utilized to support his family in partnership with his wife. Jones also reports an interest in pursuing any available vocational training while in the custody of the Bureau of Prisons. Like his evaluator, the court is of the opinion that psychological and sex offender treatment will be of greater value than a sentence of incarceration.

### C. The Sentence Imposed

Based on my policy disagreements with the relevant guidelines and on the § 3553(a) factors discussed above, a downward variance below the applicable guideline range is warranted in this case, as a guideline sentence is greater than necessary to achieve the goals of sentencing. However, there is no ambiguity regarding the parameters of an allowable sentence—having been charged with receipt of child pornography under 18 U.S.C. § 2252(a)(2), Jones is subject to the mandatory minimum sentence of five years incarceration. Despite my belief, expressed above, that the statutory mandatory minimum applicable in this case restrains my ability to balance the appropriate § 3553(a) factors and results in sentence that is greater than necessary, as the sentencing judge, I have no authority whatsoever to impose a lower sentence. Congress has

decided that this offense justifies a sentence of five years incarceration followed by supervised release, and I must acquiesce in that decision despite my disagreement.

This 13 August 2021.

*[signature]*

W. Earl Britt
Senior U.S. District Judge